Joshua Blum (SBN 249082)
Email: jblum@blumlaw.co
**BLUM LAW FIRM**
1600 Rosecrans Avenue
Building 7, 4th Floor
Manhattan Beach, CA 90266
Telephone: 310-620-7172

*Attorneys for Plaintiffs* OLIVIA ANNE QUILLIN
P/K/A SWSH and FUTURE BOUNCE LIMITED
D/B/A FUTURE BOUNCE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVIA ANNE QUILLIN, professionally known as SWSH, an individual; and FUTURE BOUNCE LIMITED, doing business as FUTURE BOUNCE, a private limited company incorporated in England and Wales,<br><br>                    Plaintiffs,<br><br>          v.<br><br>YEEZY RECORD LABEL, LLC, a California limited liability company; YE, formerly known as KANYE WEST, an individual; TYRONE GRIFFIN JR., professionally known as TY DOLLA $IGN, an individual; LABEL ENGINE, LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **Direct Copyright Infringement (Sound Recording)**<br>2. **Direct Copyright Infringement (Musical Composition)**<br>3. **Contributory Copyright Infringement (Sound Recording)**<br>4. **Contributory Copyright Infringement (Musical Composition)**<br>5. **Vicarious Copyright Infringement (Sound Recording)**<br>6. **Vicarious Copyright Infringement (Musical Composition)**<br><br>**JURY TRIAL DEMANDED** |

1

1     Plaintiffs OLIVIA ANNE QUILLIN, professionally known as SWSH, and
2  FUTURE BOUNCE LIMITED, doing business as FUTURE BOUNCE, by and
3  through their counsel of record, for their Complaint against defendants and DOES
4  1 through 10, inclusive, allege as follows:

## INTRODUCTION

5         1.     This is an action for copyright infringement under the Copyright Act
6  of 1976, 17 U.S.C. § 101 et seq., arising from defendants' unauthorized sampling,
7  copying, distribution, and public exploitation of plaintiffs' copyrighted sound
8  recording commercially released on YouTube as "Swsh - Break The Fall (Live
9  Acoustic Version)" and subsequently released on audio-only digital streaming
10  platforms as "Break the Fall - Acoustic" (hereafter referred to as "Break the Fall
11  Acoustic") and the underlying musical composition "Break the Fall" in defendants'
12  recording "530" released digitally on defendants' album *Vultures 2* on or about
13  August 3, 2024, and subsequent releases, including in a standalone "official" music
14  video released on or about January 9, 2025, and on defendants' album *Donda 2*, on
15  or about April 29, 2025.

16         2.     Plaintiff Olivia Anne Quillin, professionally known as SWSH, is an
17  acclaimed independent singer, songwriter, and producer whose genre-defying style
18  blends soul, R&B, and alternative influences.  A classically trained vocalist and
19  self-taught producer, SWSH has earned recognition for their emotive lyricism,
20  textured harmonies, and innovative production style that reflect both technical
21  sophistication and personal authenticity.  SWSH's work has been featured on
22  major streaming platforms, praised by critics, and embraced by a global audience
23  for its distinctive emotional depth and sonic originality.

24         3.     Among SWSH's catalog, the recording "Break the Fall Acoustic"—
25  first commercially released in 2018—stands as a signature work.  SWSH wrote,
26  recorded, and produced the song, and owns ninety percent (90%) of the copyright
27  in the musical composition and owns the sound recording copyright in full.  "Break

2

**PLAINTIFFS' COMPLAINT**

the Fall" embodies SWSH's lyrical, melodic ingenuity, and expressive vocal performance, marking a defining statement of SWSH's creative voice and artistic identity.  In 2018, SWSH granted Future Bounce an exclusive worldwide license to exploit the "Break the Fall Acoustic" sound recording.

4.    On or about August 3, 2024, defendants released the recording "530," on the album *Vultures 2*.  The track was publicly credited to defendants Kanye West and Tyrone Griffin Jr., professionally known as TY DOLLA $IGN, as recording artists, and released through Kanye West's Yeezy Record Label, LLC, which utilizes distributor Label Engine, LLC, and was made available on every major streaming platform.

5.    Without any authorization, license, or consent, "530" incorporates substantial portions of SWSH's sound recording "Break the Fall Acoustic" and its underlying musical composition "Break the Fall."  The recording directly copies SWSH's recorded vocal performance and musical composition, repeatedly looping SWSH's voice and melody, using the same phrasing, tone, and harmonic sequence that define the original.  Those elements form the central hook and emotional foundation of "530."  By copying and embedding these protected portions directly into "530," defendants used SWSH's creative work as the structural basis for their own release and commercially exploited it under their names without authority.

6.    Defendants' infringement was intentional and willful.  Indeed, despite receiving explicit notice of their infringement, defendants released "530" *three additional times* to date, including on Kanye West's album *Donda 2,* which incorporated the same unauthorized sample *without any license or right to do so*. Such willful, knowing, and deliberate conduct reflects a conscious decision to misappropriate plaintiffs' intellectual property and to profit from it.

7.    By exploiting SWSH's creative output without credit or compensation, defendants usurped the commercial and artistic value of their sound recording and underlying musical composition while misrepresenting its

**PLAINTIFFS' COMPLAINT**

authorship to the public.  This unauthorized use deprived plaintiffs of rightful sales and licensing revenue, diminished the value of their work, and interfered with their ability to control how that work is experienced and perceived.  The infringement continues to generate millions of unauthorized streams and downloads across digital platforms, further compounding plaintiffs' losses and amplifying the need for judicial intervention.

## PARTIES

8.    Plaintiff OLIVIA ANNE QUILLIN, professionally known as SWSH ("**SWSH**"), is an individual who is domiciled in the State of California and resides in the County of Los Angeles.  SWSH is the sole owner of the copyright in the sound recording titled "Break the Fall Acoustic" (the "**Sound Recording**") and co-wrote and holds a ninety percent (90%) ownership interest in the copyright in the musical composition "Break the Fall" (the "**Musical Composition**") (the Sound Recording and the Musical Composition are referred to collectively as the "**Work**").  The remaining ten percent (10%) interest in the Musical Composition is held by co-writers pursuant to their respective contributions.

9.    Plaintiff FUTURE BOUNCE LIMITED, doing business as FUTURE BOUNCE ("**Future Bounce**"), is an entity incorporated under the laws of England and Wales, with its principal place of business located in London, England.  At all relevant times, Future Bounce has held the exclusive worldwide license to exploit the Sound Recording and is authorized to bring this action to protect its exclusive rights.

10.    Defendant YE, formerly known as KANYE WEST ("**West**"), is an individual who is domiciled in the State of California and resides in the County of Los Angeles.  West is formally credited as a Producer and Lyricist/Songwriter on the recording titled "530" (the "**Infringing Work**").

11.    Defendant TYRONE GRIFFIN JR., professionally known as TY DOLLA $IGN ("**Griffin**"), is an individual who, upon information and belief, is

**PLAINTIFFS' COMPLAINT**

domiciled in the State of California and resides in the County of Los Angeles. Griffin is formally credited as a Producer and Lyricist/Songwriter on the Infringing Work.

12.   Defendant YEEZY RECORD LABEL, LLC ("**YZY**") is a California limited liability company with its principal place of business in the County of Los Angeles, State of California.  Upon information and belief, at all relevant times, West owned and controlled YZY and directed its operations from California. YZY is the record label responsible for releasing, distributing, promoting, and commercially exploiting the albums *Vultures 2* and *Donda 2*, and related music video, which include the Infringing Work.

13.   Defendant LABEL ENGINE, LLC ("**Label Engine**") is a California limited liability company with its principal place of business in the County of Los Angeles, State of California.  Label Engine serves as the music distributor for the albums *Vultures 2* and *Donda 2,* which include the Infringing Work, including by reproducing and transmitting the Infringing Work to digital service providers ("**DSPs**") as part of its distribution services.

14.   The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to plaintiffs at this time.

15.    Plaintiffs will amend this Complaint to state the true names and capacities of the Doe defendants when such information has been ascertained through discovery.

16.   Plaintiffs are informed and believe, and on that basis allege, that each defendant designated herein as a Doe is legally responsible in some manner for the acts, omissions, and conduct alleged herein and for the injuries and damages sustained by plaintiffs as alleged herein.

17.   Plaintiffs are informed and believe, and on that basis allege, that at all times relevant herein, each defendant was acting as the agent, employee, partner,

5

**PLAINTIFFS' COMPLAINT**

joint venturer, alter ego, and co-conspirator of each remaining defendant and was acting within the course and scope of said agency, employment, partnership, joint venture, and conspiracy.

## JURISDICTION AND VENUE

18.     This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq.

19.     This Court has personal jurisdiction over all defendants.  West and Griffin are domiciled in California.  YZY is a California limited liability company with its principal place of business in the County of Los Angeles, State of California.  Label Engine is a California limited liability company with its principal place of business in the County of Los Angeles, State of California.

20.     The wrongful conduct at issue was performed in California and purposefully directed to California and caused harm in California, and material acts giving rise to the infringement occurred in California and/or were directed from California.  Upon information and belief, at all relevant times, West owned and controlled YZY and directed its operations from California, including the release and distribution of the albums *Vultures 2* and *Donda 2,* and related music video, containing the Infringing Work.  Label Engine acted as the digital distributor of the Infringing Work, reproducing and transmitting the Infringing Work, including through activities conducted in and/or directed from California and into California.  Each defendant engaged in acts of copyright infringement in California and expressly aimed at California, causing foreseeable injury to plaintiffs in California.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) because defendants West and Griffin are domiciled in the State of California, County of Los Angeles, and defendants YZY and Label Engine are California limited liability companies that each maintain their principal places of business in

**PLAINTIFFS' COMPLAINT**

this District. Upon information and belief, a substantial part of the events giving rise to the claims occurred in this District. Upon information and belief, the Infringing Work was conceived, produced, and recorded in part in Los Angeles County, California, within this District.

## FACTS COMMON TO ALL CLAIMS

### A. SWSH's Creation of the Work

22.    SWSH is a Los Angeles, California-based singer, songwriter, and producer whose music fuses elements of R&B, soul, and alternative pop. SWSH's work is recognized for its introspective lyricism, genre-bending soundscapes, and distinct vocal character. These qualities have earned SWSH critical recognition in leading music publications and a devoted following on streaming platforms.

23.    SWSH's artistic identity is defined by their independence and authenticity. Having built their career outside of the major-label system, they write, perform, and produce much of their own material. SWSH's voice has been described as both soulful and ethereal, distinguishing them within a crowded field of emerging artists.

24.    In 2018, SWSH co-wrote the Musical Composition and recorded the Sound Recording embodying the Musical Composition. The Musical Composition features an original melodic structure, chord progression, and lyrical theme that are distinctive to SWSH's songwriting style. The Sound Recording features SWSH's original lyrics, melody, and vocal performance, together with distinctive harmonic and rhythmic elements that reflect their artistic style. It is widely regarded within SWSH's fan community and among producers as one of their most distinctive creations.

25.    In both the Musical Composition and the Sound Recording, a climactic closing section near the end of the Work features SWSH singing the words "baby, yea, oh baby will pick up when you call, yea, yea" to an original sequence of notes over a distinctive chord progression and rhythmic pattern. This

**PLAINTIFFS' COMPLAINT**

closing vocal phrase, and the accompanying harmony and rhythm, are a key expressive element of the Musical Composition and a memorable feature of the Sound Recording.

26.    The Sound Recording was first released on or about November 30, 2018, on YouTube.  It was later featured in various editorial playlists and received widespread listener engagement, further establishing SWSH's presence in the contemporary R&B and alternative scene.

27.    Following its 2018 release, the Sound Recording attracted critical notice for its emotional resonance and innovative blend of genres.  The Sound Recording was featured on multiple curated streaming playlists, garnered editorial attention from music publications, and became emblematic of SWSH's emergence as a leading independent artist with a growing national and international audience.

28.    The United States Copyright Office issued a Certificate of Registration No. SR 1-009-132 for the Sound Recording effective August 6, 2024.

29.    The United States Copyright Office issued a Certificate of Registration No. PA 2-553-862 for the Musical Composition effective November 17, 2025.

**B.    Future Bounce's Exclusive Rights in the Sound Recording**

30.    In 2018, SWSH collaborated with the independent London-based record label Future Bounce, an entity known for developing globally recognized emerging artists.

31.    Pursuant to a written licensing agreement dated September 13, 2018 (amended on June 18, 2019), SWSH granted Future Bounce the exclusive right to reproduce, distribute, and license the Sound Recording throughout the world, including within the United States, and the right to enforce such rights in its own name.

32.    The Sound Recording remains a valuable creative and commercial asset to plaintiffs.  The Work has been licensed for performance, broadcast, and

**PLAINTIFFS' COMPLAINT**

promotional uses, and continues to generate streaming and publishing revenue.

## C.    <u>Defendants' Backgrounds</u>

33.    The defendants are successful and experienced music-industry professionals and entities with decades of industry knowledge and resources at their disposal.  Each defendant has built a career around professional recording, sampling, and distribution, and is aware of the necessity of obtaining clearances before using another's work.

34.    West is a globally recognized recording artist, producer, and entrepreneur.  He has received dozens of Grammy Awards, released multiple multi-platinum albums, and produced or co-written multi-platinum recordings.  Upon information and belief, West served as the principal creative force behind the *Vultures 2* and *Donda 2* projects and made the final decisions regarding the sound, composition, and release of the Infringing Work.

35.    Griffin is a Grammy-nominated recording artist, songwriter, and producer known for collaborations with recording artists such as Post Malone, Wiz Khalifa, and Megan Thee Stallion.  As West's creative partner on the *Vultures 2* project, Griffin co-wrote, produced, and performed on the Infringing Work.

36.    YZY operates as West's in-house record label and distribution entity.  Upon information and belief, it is the vehicle through which West releases and monetizes his music and affiliated collaborations.  Upon information and belief, at all relevant times, West owned and controlled YZY and directed its operations from California.  YZY oversaw the release of the album *Vultures 2*, distributed the Infringing Work across global streaming platforms, and managed its promotion.  Upon information and belief, all creative and operational decisions concerning *Vultures 2* and *Donda 2*, including the clearance—or lack thereof—of samples and source materials, were made under West's direction and control through YZY.

37.    Label Engine is a digital distribution company that provides backend delivery, rights administration, and royalty accounting services for independent

**PLAINTIFFS' COMPLAINT**

labels and major artists alike.  Upon information and belief, Label Engine's business model centers on reproducing and transmitting recordings to DSPs such as Spotify, Apple Music, and YouTube, and monetizing those recordings through royalties and advertising revenue.  Label Engine acts as a digital distributor for *Vultures 2* and *Donda 2*, reproducing and transmitting the Infringing Work to DSPs and thereby materially contributing to the unauthorized public performance and commercial exploitation of the Work, and, upon information and belief, collects and distributes revenues generated from exploitation of the Infringing Work.

**D.    Defendants Release the Infringing Work**

38.    West and Griffin recorded the Infringing Work during studio sessions as part of the *Donda 2* project.  Upon information and belief, defendants or their agents accessed and obtained a copy of the Sound Recording and used it to create the Infringing Work. The Infringing Work was built around and prominently features an unauthorized sample derived from the Sound Recording.

39.    The Infringing Work incorporates from its opening a substantial and recognizable portion of the Sound Recording taken from its outro section (beginning at approximately the 4:38 mark of the Sound Recording).  West and Griffin looped and continuously repeated this unauthorized sample from the beginning of the Infringing Work until approximately the two-minute mark of the four-minute-and-fifty-second-long track.  West and Griffin repeated this sample using SWSH's recorded musical and distinct vocal performance of the phrase "baby, yea, oh baby will pick up when you call, yea, yea." Throughout this two-minute section, West delivers rap verses over the unauthorized sample, while SWSH's underlying vocal performance and music taken from the Sound Recording remain unchanged.  On information and belief, Griffin's high-pitched vocals are incorporated at the two-minute mark of the Infringing Work, continuing until the 2:24 mark of the track.

**PLAINTIFFS' COMPLAINT**

40.    The Infringing Work also copies the original expression embodied in the Musical Composition by repeatedly sampling and looping SWSH's vocal performance of the content contained in the closing section of the Musical Composition as embodied in the Sound Recording.  The copied vocal performance is used prominently and repeatedly as a foundational element of the Infringing Work, making it immediately recognizable to listeners familiar with the Musical Composition and Sound Recording.

41.    On or about August 3, 2024, the Infringing Work was digitally released publicly as part of the album *Vultures 2*, through YZY and Label Engine, with Label Engine reproducing and transmitting the Infringing Work to DSPs.  The Infringing Work continues to be distributed globally on streaming platforms including Spotify, Apple Music, YouTube, and Amazon Music.

42.    The sections of the Infringing Work built on the sampled material are musically and lyrically identical, or substantially similar to the protectable expression embodied in the closing section of the Sound Recording and its underlying Musical Composition.

43.    The Infringing Work is substantially similar to the protectable material embodied in the Sound Recording because it reproduces SWSH's recorded music and vocal performance, including their vocal timbre, phrasing, timing, and delivery, and uses that sampled music and performance as the foundation of the Infringing Work for approximately the first two minutes.

44.    Defendants copied the Musical Composition and Sound Recording, and substantial portions thereof, without authorization, license, or permission.

45.    Defendants reproduced, distributed, and publicly released the Infringing Work without authorization, license, or permission.

46.    Upon information and belief, the defendants were aware that the sample was taken from the Sound Recording and the Musical Composition and that authorization was required prior to use.

**PLAINTIFFS' COMPLAINT**

47.     Defendants  proceeded to produce and distribute copies of the Infringing Work, including digital phonorecord deliveries to streaming platforms and other online services, without authorization, license, or permission.

48.     Upon release, *Vultures 2*, which includes the Infringing Work, received significant publicity and commercial exposure across digital and social media platforms, with "530" having achieved over fifty million (50,000,000) streams solely on Spotify to date.

**E.     Defendants Release Three Additional Unauthorized Versions of "530" Despite Notice of Infringement**

49.     Shortly after the release of the Infringing Work on *Vultures 2,* plaintiffs' representatives sent written demand letters notifying West and YZY of the unauthorized use of the Sound Recording and Musical Composition, and seeking to resolve defendants' infringement.

50.     Months after the initial release of the Infringing Work—and while communicating with plaintiffs' representatives about the infringement—defendants released a second version of the Infringing Work in or about November 2024, which again incorporated the same copied material from the Sound Recording without permission, further confirming defendants' knowledge of and intent to infringe plaintiffs' rights.

51.     Thereafter, on or about January 9, 2025, defendants released a standalone music video of the Infringing Work, which synchronized and embodied unauthorized copies of the Sound Recording and Musical Composition.  At the time the exploitation of the video began, West's and YZY's representatives were in communication with plaintiffs' representatives about the infringement, thus further confirming their knowledge of and intent to infringe plaintiffs' rights.

52.     Thereafter, on or about April 29, 2025, the Infringing Work was released yet again on the album *Donda 2*, achieving over thirteen million (13,000,000) streams on Spotify alone to date, incorporating the same copied

**PLAINTIFFS' COMPLAINT**

material from the Sound Recording without permission, further confirming defendants' knowledge of and intent to infringe plaintiffs' rights.

53.     After the *Donda 2* release, West's and YZY's representatives effectively ceased communicating, leaving the infringement unresolved while defendants continued to profit from the Infringing Work.

54.     Since its release, the Infringing Work has been streamed and downloaded tens of millions of times across major digital platforms including Spotify, Apple Music, YouTube, and Amazon Music.  Each of these plays generates ongoing revenue for defendants and their affiliates through royalties, publishing income, and performance rights collections.

55.     Upon information and belief, defendants continue to collect and distribute such revenues, despite having full notice of plaintiffs' ownership rights and demands to cease exploitation.

56.     Through their actions, defendants have caused plaintiffs significant harm, including loss of sales and licensing revenue, dilution of creative control, and reputational damage within the music industry.  The Infringing Work continues to generate millions of unauthorized streams and ongoing income for defendants, compounding the injury to plaintiffs and necessitating the filing of this action.

## FIRST CLAIM

### (Direct Copyright Infringement)

### (By Plaintiffs Against Defendants and Does 1-10)

57.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

58.     Plaintiff SWSH is the owner of the copyright in the Sound Recording. The Sound Recording is registered with the U.S. Copyright Office under Registration Number SR 1-009-132.

59.     Pursuant to a written licensing agreement dated September 13, 2018

**PLAINTIFFS' COMPLAINT**

(as amended), SWSH granted Future Bounce an exclusive license to reproduce, distribute, and license the Sound Recording throughout the world, including within the United States.  Under that agreement, Future Bounce holds the exclusive rights granted by SWSH under 17 U.S.C. § 106 and possesses standing, together with SWSH, to bring this action pursuant to 17 U.S.C. § 501(b).

60.     Defendants created, reproduced, distributed, and publicly released a sound recording of the Infringing Work, appearing on the albums *Vultures 2* and *Donda 2*, and in the video, which were released by YZY and distributed by Label Engine.  West and Griffin are credited as lyricists and songwriters on the Infringing Work.  YZY is the record label responsible for releasing the Infringing Work, and, upon information and belief, West owned and controlled YZY and directed its operations, including the release and distribution of the albums *Vultures 2* and *Donda 2* and related music video, containing the Infringing Work. Label Engine is the distributor of the Infringing Work, which, as part of its distribution services, reproduces and transmits recordings to DSPs and monetizes those recordings through royalties and advertising revenue.

61.     Without authorization, defendants willfully copied, reproduced, distributed, and publicly performed substantial portions of the Sound Recording by incorporating samples thereof into the Infringing Work.

62.     Defendants' acts constitute infringement of plaintiffs' exclusive rights under 17 U.S.C. § 106.  Each defendant is jointly and severally liable for such infringement.

63.     As a direct and proximate result of defendants' infringement of the Sound Recording, plaintiffs have sustained and will continue to sustain damages in an amount to be proven at trial, and are entitled to all remedies available under 17 U.S.C. §§ 502–505, including injunctive relief, actual damages, defendants' profits, and costs.

64.     Defendants possess the financial information necessary to determine

**PLAINTIFFS' COMPLAINT**

the full scope of revenues, receipts, and profits derived from the creation, release, and exploitation of the Infringing Work.  Plaintiffs therefore seek an accounting of all such revenues and profits attributable to the infringement of the Sound Recording, to permit recovery under 17 U.S.C. § 504(b).

## SECOND CLAIM

### (Direct Copyright Infringement)

### (By SWSH Against Defendants and Does 1-10)

65.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

66.    SWSH is an author and holds a ninety percent (90%) ownership interest in the copyright in the Musical Composition.  The Musical Composition is registered with the U.S. Copyright Office under Registration No. PA 2-553-862.

67.    SWSH has retained exclusive rights under 17 U.S.C. § 106 to reproduce, distribute, and prepare derivative works of the Musical Composition, to publicly perform the Musical Composition, and to authorize others to do so. SWSH's ownership interest entitles SWSH to maintain this action for infringement under 17 U.S.C. § 501(b).

68.    Without authorization, defendants copied, reproduced, and distributed substantial and qualitatively significant portions of the Musical Composition, including the distinctive closing section in which SWSH sings the words "baby, yea, oh baby will pick up when you call, yea, yea" to an original sequence of notes over a particular chord progression and rhythmic pattern. In the first approximately two minutes of the Infringing Work, defendants use the same lyrics, the same sequence of notes and melodic contour, substantially the same rhythmic pattern, and substantially the same underlying chord progression as in that closing section of the Musical Composition.  Such acts were undertaken intentionally and in disregard of SWSH's rights. Defendants further publicly released and exploited the Infringing Work through commercial release and widespread streaming across

**PLAINTIFFS' COMPLAINT**

major digital platforms, generating ongoing revenue for defendants and their affiliates and publicly performing the Musical Composition.

69.    Defendants' conduct constitutes infringement of SWSH's exclusive rights in the Musical Composition under 17 U.S.C. § 106.  Each defendant is jointly and severally liable for such infringement.

70.    As a direct and proximate result of defendants' infringement of the Musical Composition, SWSH has sustained and will continue to sustain damages in an amount to be proven at trial, and is entitled to all remedies available under 17 U.S.C. §§ 502–505, including injunctive relief, actual damages, defendants' profits, and costs.

71.    Defendants alone possess the financial information necessary to determine the full scope of revenues, receipts, and profits derived from the creation, release, and exploitation of the Infringing Work.  SWSH therefore seeks an accounting of all such revenues and profits attributable to the infringement of the Musical Composition, to permit recovery under 17 U.S.C. § 504(b).

## THIRD CLAIM

### (Contributory Copyright Infringement)

### (By Plaintiffs Against Defendants and Does 1-10)

72.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

73.    West, Griffin, YZY, and Label Engine each knowingly induced, caused, or materially contributed to the infringing reproduction, distribution, and public release of the Sound Recording by one or more of the other defendants, including by overseeing, authorizing, facilitating, and effectuating the commercial release and dissemination of the Infringing Work through the YZY label and Label Engine distribution channels alleged herein.

74.    Each of the defendants had actual or constructive knowledge of the infringing nature of the Infringing Work, including that it contained an

16

**PLAINTIFFS' COMPLAINT**

unauthorized reproduction of the Sound Recording.  Plaintiffs provided written notice of the infringement shortly after the initial release to West and YZY representatives, and defendants nevertheless continued to release and exploit additional versions thereafter, including while representatives for West and YZY were in communication with plaintiffs' representatives regarding the infringement. Such defendants, with knowledge of the infringing activity, provided material support, assistance, or encouragement to the direct infringers of the Infringing Work, including by continuing to distribute, monetize, and commercially exploit the Infringing Work through digital platforms and other channels.

75.    Each of the foregoing defendants thereby engaged in contributory copyright infringement and is jointly and severally liable with all other infringing parties for damages under 17 U.S.C. § 504 and for injunctive and other relief under 17 U.S.C. §§ 502–505.

76.    As a direct and proximate result of defendants' contributory infringement of the Sound Recording, plaintiffs have sustained and will continue to sustain damages in an amount to be proven at trial, and are entitled to all remedies available under 17 U.S.C. §§ 502–505, including injunctive relief, actual damages, defendants' profits, and costs.

## FOURTH CLAIM

### (Contributory Copyright Infringement)

### (By SWSH Against Defendants and Does 1-10)

77.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

78.    West, Griffin, YZY, and Label Engine each knowingly induced, caused, or materially contributed to the infringing use and incorporation of the Musical Composition into the Infringing Work, including by overseeing, authorizing, facilitating, and effectuating the commercial release and dissemination of the Infringing Work through the YZY label and Label Engine distribution

**PLAINTIFFS' COMPLAINT**

channels alleged herein.

79.    Each of these defendants had actual or constructive knowledge that the Infringing Work incorporated the Musical Composition, or substantial portions thereof, without authorization, and they intentionally participated in, facilitated, and profited from the reproduction, adaptation, preparation of derivative works, release, and distribution of the Infringing Work. Plaintiffs provided written notice of the infringement shortly after the initial release to West and YZY representatives, and defendants nevertheless continued to release and exploit additional versions thereafter, including while representatives for West and YZY were in communication with plaintiffs' representatives regarding the infringement.

80.    Each of the foregoing defendants thereby engaged in contributory copyright infringement and is jointly and severally liable with all other infringing parties for damages under 17 U.S.C. § 504 and for injunctive and other relief under 17 U.S.C. §§ 502–505.

81.    As a direct and proximate result of defendants' contributory infringement of the Musical Composition, SWSH has sustained and will continue to sustain damages in an amount to be proven at trial, and is entitled to all remedies available under 17 U.S.C. §§ 502–505, including injunctive relief, actual damages, defendants' profits, and costs.

## FIFTH CLAIM

### (Vicarious Copyright Infringement)

### (By Plaintiffs Against Defendants and Does 1-10)

82.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

83.    West, Griffin, YZY, and Label Engine had the right and ability to supervise and control the infringing conduct alleged herein, including the reproduction, distribution, and release of the Sound Recording incorporated into the Infringing Work, including by controlling and/or effectuating the commercial

**PLAINTIFFS' COMPLAINT**

release, dissemination, and continued exploitation of the Infringing Work through the YZY label and Label Engine distribution channels alleged herein.

84.    Such defendants also derived a direct financial benefit from the exploitation of the Infringing Work through commercial release, digital streaming, monetization, and distribution revenue.

85.    By virtue of their right and ability to control the infringing activity and their direct financial interest in it, such defendants are vicariously liable for the acts of direct infringement committed by the other defendants, including the reproduction, distribution, and digital exploitation of the Sound Recording as incorporated into the Infringing Work.

86.    As a direct and proximate result of defendants' vicarious infringement of the Sound Recording, plaintiffs have sustained and will continue to sustain damages in an amount to be proven at trial, and are entitled to all remedies available under 17 U.S.C. §§ 502–505, including injunctive relief, actual damages, defendants' profits, and costs.

## SIXTH CLAIM

### (Vicarious Copyright Infringement)

### (By SWSH Against Defendants and Does 1-10)

87.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

88.    West, Griffin, YZY, and Label Engine had the right and ability to supervise and control the infringing conduct alleged herein, including the reproduction, adaptation, distribution, and public release of the Musical Composition as incorporated into the Infringing Work, including by controlling and/or effectuating the commercial release, dissemination, and continued exploitation of the Infringing Work through the YZY label and Label Engine distribution channels alleged herein.

89.    Such defendants derived a direct financial benefit from the

**PLAINTIFFS' COMPLAINT**

exploitation of the Infringing Work through its commercial release, streaming, and monetization, which included the unauthorized use of the Musical Composition.

90.     By virtue of their right and ability to control the infringing activity and their direct financial interest in it, these defendants are vicariously liable for the acts of direct infringement committed by the other defendants, including the reproduction, distribution, preparation of derivative works, and public performance of the Musical Composition as incorporated into the Infringing Work.

91.     As a direct and proximate result of defendants' vicarious infringement, SWSH has sustained and will continue to sustain damages in an amount to be proven at trial, and is entitled to all remedies available under 17 U.S.C. §§ 502–505, including injunctive relief, actual damages, defendants' profits, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against defendants as follows:

A.     That the Court issue preliminary and permanent injunctions pursuant to 17 U.S.C. § 502 enjoining defendants, and their officers, agents, servants, employees, attorneys, successors, and all persons in active concert or participation with them from:

(1)   reproducing, distributing, publicly performing, or otherwise using the Work, including both the Sound Recording and the Musical Composition, or any portions thereof; and

(2)   reproducing, distributing, publicly performing, or otherwise using the Infringing Work or any derivative works based upon the Work.

B.     That the Court order defendants to provide a full and accurate accounting of all revenues, receipts, profits, and other benefits derived from the creation, reproduction, distribution, performance, and exploitation of the Infringing

**PLAINTIFFS' COMPLAINT**

Work, and that the Court order the disgorgement of such profits to plaintiffs.

C.      That the Court award plaintiffs their actual damages and defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b).

D.      That the Court award plaintiffs their costs of this action pursuant to 17 U.S.C. § 505.

E.      That the Court award plaintiffs prejudgment and post-judgment interest at the maximum rate permitted by law.

F.      That the Court grant plaintiffs such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: February 12, 2026                    Respectfully submitted,
                                            BLUM LAW FIRM


                                            By:/s/ Joshua Blum
                                               Joshua Blum
                                               *Attorneys for Plaintiffs*
                                               OLIVIA ANNE QUILLIN P/K/A SWSH
                                               and FUTURE BOUNCE LIMITED
                                               D/B/A FUTURE BOUNCE

21

**PLAINTIFFS' COMPLAINT**