Joshua Blum (SBN 249082)
Email: jblum@blumlaw.co
**BLUM LAW FIRM**
1600 Rosecrans Avenue
Building 7, 4th Floor
Manhattan Beach, CA 90266
Telephone: 310-620-7172

*Attorneys for Plaintiffs* OLIVIA ANNE QUILLIN P/K/A SWSH and FUTURE BOUNCE LIMITED D/B/A FUTURE BOUNCE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OLIVIA ANNE QUILLIN, professionally known as SWSH, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>YEEZY RECORD LABEL, LLC, a California limited liability company, et al.,<br><br>Defendants. | Case No.: 2:26–cv–01498–CAS–ADS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR EXTENSION OF TIME TO COMPLETE SERVICE OF PROCESS ON DEFENDANT YE, FORMERLY KNOWN AS KANYE WEST, PURSUANT TO FED. R. CIV. P. 4(m) AND AUTHORIZATION OF ALTERNATIVE METHODS OF SERVICE**<br>**[Declarations of Joshua Blum, Belki Cisneros Chevez, Liudmila Terentyeva, Nelli Gevorgyan, and Gregory Peck; [Proposed] Order filed concurrently herewith]**<br><br>Hearing Date: June 29, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Christina A. Snyder |

PLEASE TAKE NOTICE that on Monday, June 29, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8D of the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, before the Honorable Christina A. Snyder, United States District Judge, Plaintiffs Olivia Anne Quillin, professionally known as SWSH, and Future Bounce Limited, doing business as Future Bounce (collectively, "Plaintiffs"), will and hereby do move the Court for an order:

1. Extending the time within which Plaintiffs must complete service of process on Defendant Ye, formerly known as Kanye West ("Ye"), by ninety days, pursuant to Fed. R. Civ. P. 4(m); and

2. Authorizing alternative methods of service on Defendant Ye, pursuant to Fed. R. Civ. P. 4(e)(1) and Cal. Civ. Proc. Code § 413.30, by: (a) posting copies of the Summons and First Amended Complaint at the property gate of 72 Beverly Park, Beverly Hills, California 90210, Ye's residence ("Beverly Park Residence"); (b) service of the Summons and First Amended Complaint on the armed security guard escort assigned to accompany Plaintiffs' process server to the Beverly Park Residence; (c) mailing of the Summons and First Amended Complaint by certified mail to the Beverly Park Residence; and (d) emailing copies of the Summons and First Amended Complaint to attorney Eduardo Martorell of Martorell Law APC at the following email address: EMartorell@martorell-law.com.

This Motion is made on the grounds that, despite Plaintiffs' diligent efforts to effect service on Ye within ninety days of the original filing of this action, Plaintiffs have been unable to do so as the result of factors outside Plaintiffs' control, including the obstruction of service at the Beverly Park Residence, the lack of a business address, and the refusal of Ye to waive service of process. Good cause exists under Rule 4(m) for the requested extension. Furthermore, the proposed alternative methods of service are reasonably calculated to give actual

notice to Defendant Ye and to satisfy the requirements of due process.

This Motion is made following the April 20, 2026 telephonic conference between Plaintiffs' counsel and Eduardo Martorell, who had indicated to Plaintiffs' counsel that he would be representing Defendant Ye in this action and who is counsel of record in this action for defendant Yeezy Record Label, LLC, Ye's record label, and the entity in which Ye is a manager and/or a member. The substance of the contemplated motion was further memorialized in Plaintiffs' counsel's email correspondence to Mr. Martorell dated April 28, 2026, which offered additional conference times on April 30 and May 1, 2026 to discuss an informal resolution. Mr. Martorell did not respond to Plaintiffs' counsel's April 28 correspondence.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Joshua Blum, Belki Cisneros Chevez, Liudmila Terentyeva, Nelli Gevorgyan, and Gregory Peck, and the exhibits thereto, the [Proposed] Order filed concurrently herewith, all pleadings and papers on file in this action, and any further argument or evidence that may be presented at or before the hearing on this Motion.

Dated: May 12, 2026

Respectfully submitted,
BLUM LAW FIRM

By: /s/ Joshua Blum
Joshua Blum
*Attorneys for Plaintiffs*
OLIVIA ANNE QUILLIN P/K/A SWSH and FUTURE BOUNCE LIMITED D/B/A FUTURE BOUNCE

# TABLE OF CONTENTS


Page(s)

**I. INTRODUCTION** ........ 8

**II. STATEMENT OF FACTS** ........ 9

A. Procedural Background ........ 9

B. Plaintiffs' Diligent Efforts to Effect Service on Ye ........ 10

1. Identification of Ye's Current Residence ........ 10

2. The Eleven Attempts to Serve Ye at the Beverly Park Residence ........ 11

3. Attempts to Serve Ye at the Address of Yeezy and Shore Drive Holdings, LLC ........ 15

4. Communications with Counsel Eduardo Martorell ........ 16

**III. ARGUMENT** ........ 17

A. Good Cause Exists for Granting Plaintiffs a Ninety-Day Extension of Time to Serve Ye ........ 17

1. Plaintiffs Have Demonstrated Good Cause to Extend the Deadline to Serve Ye ........ 18

B. In The Alternative, the Court Should Exercise Its Discretion to Extend the Time for Service by Ninety Days ........ 22

C. The Court Should Authorize the Alternative Methods of Service on Ye ........ 23

1. Plaintiffs Satisfy the Requirements for Alternative Service ........ 24

2. The Court Should Authorize the Four Proposed Alternative Methods of Service on Ye ........ 26

**IV. CONCLUSION** ........ 28

# TABLE OF AUTHORITIES

Page(s)

Cases

*Boudette v. Barnette,*
923 F.2d 754 (9th Cir. 1991) .......... 18

*Cadence Design Sys., Inc. v. Fenda USA Inc.,*
734 F. Supp. 3d 960 (N.D. Cal. 2024) .......... 25

*Efaw v. Williams,*
473 F.3d 1038 (9th Cir. 2007) .......... 22

*Espindola v. Nunez,*
199 Cal.App.3d 1389 (1988) .......... 23

*F. I. duPont, Glore Forgan & Co. v. Chen,*
41 N.Y.2d 794 (1977) .......... 27

*Glob. Weather Prods., LLC v. DiCaprio,*
No. 2:23-CV-09279-SK, 2024 WL 5495346 (C.D. Cal. Jan. 30, 2024) .......... 21

*Henderson v. United States,*
517 U.S. 654 (1996) .......... 18

*Hoskins v. City of San Diego,*
No. 24-CV-01488-AJB-DTF, 2025 WL 1994677 (S.D. Cal. July 17, 2025) .......... 23

*In re Nat'l Sec. Agency Telecommunications Recs. Litig.,*
564 F. Supp. 2d 1109 (N.D. Cal. 2008) .......... 23

*In re Sheehan,*
253 F.3d 507 (9th Cir. 2001) .......... 17, 18, 22

*Khourie, Crew & Jaeger v. Sabek, Inc.,*
220 Cal. App. 3d 1009 (1990) .......... 27

*Lemoge v. United States,*
587 F.3d 1188 (9th Cir. 2009) .......... 18

*Marathon Petroleum Co. LP v. Highland Cargo Inc.*,
No. 24-CV-0298-BAS-AHG, 2024 WL 3297488 (S.D. Cal. July 3, 2024)........ 22
*Medlink Health Sols., LLC v. Maddox Def. Inc.*,
No. 22-CV-1306-AGS-DEB, 2024 WL 5037515 (S.D. Cal. Sept. 12, 2024)..... 20
*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
686 F. Supp. 3d 900 (N.D. Cal. 2023)............................................................ 24
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ........................................................................... 24, 27, 28
*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ..................................................................... 24, 28
*U.S. Liab. Ins. Co. v. Hediz, LLC*,
No. 3:25-CV-00261-ART-CLB, 2025 WL 3215920 (D. Nev. Nov. 17, 2025) . 26, 27
*Watts v. Crawford*,
10 Cal. 4th 743 (1995)........................................................................................ 26
*Weberman v. Noble Collection*,
No. 2:24-CV-05230-AB-AJR, 2025 WL 1377758 (C.D. Cal. Apr. 1, 2025) ..... 22
*Yates v. Yee Mei Cheung*,
No. C10-5404 TEH, 2012 WL 3155700 (N.D. Cal. Aug. 2, 2012) .................... 18

Statutes

Cal. Civ. Proc. Code § 413.30 ................................................................ passim
Cal. Civ. Proc. Code § 415.20(b) ......................................................... 24, 25, 27

Rules

Fed. R. Civ. P. 4(m)........................................................................................ passim
LR 8-3.................................................................................................................... 16

Other Authorities

Appendix C. Federal Rules of Civil Procedure for the United States District Courts, with Advisory Committee Notes, 12A Fed. Prac. & Proc. Civ. App. C (2026 ed.) ........ 21

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Olivia Anne Quillin, professionally known as SWSH, and Future Bounce Limited d/b/a Future Bounce (collectively, "Plaintiffs") respectfully move the Court, pursuant to Fed. R. Civ. P. 4(m), for a ninety-day extension of time to serve defendant Ye, formerly known as Kanye West ("Ye"), and for an order authorizing alternative methods of service during the extended period pursuant to Rule 4(e)(1)[1] and Cal. Civ. Proc. Code § 413.30.

This is a copyright-infringement action arising from defendants' unauthorized sampling and use of Plaintiffs' sound recording "Break the Fall Acoustic," and its underlying composition in defendants' sound recording "530." The First Amended Complaint ("FAC") alleges that Ye is among the credited producers, songwriters, and lyricists of "530." (FAC ¶¶ 4, 10.) Three out of the four defendants—Yeezy Record Label, LLC ("Yeezy"), Ye's record label; Too Lost, LLC ("Too Lost"); and Tyrone Griffin, Jr. p/k/a Ty Dolla $ign ("Griffin")—have been served. Ye, however, has not been served despite Plaintiffs' sustained and diligent efforts to do so.

Plaintiffs have made eleven attempts to serve Ye personally at his Beverly Hills residence located at 72 Beverly Park, Beverly Hills, California 90210 (the "Beverly Park Residence"). They have attempted service at two separate business addresses associated with Ye. They requested, through counsel, that Ye waive service of process. Each avenue has failed. The Beverly Park Residence is fortified by physical barriers and private armed security personnel that have prevented direct access to the residence; both business locations are vacant and unserviceable; and Ye, through counsel, has made clear that he will not waive service of process.

Indeed, the obstacles to service are not attributable to any lack of diligence

[1] All references herein to "Rule" shall refer to the Federal Rules of Civil Procedure.

on Plaintiffs' part, but rather to circumstances entirely outside their control. Good cause for the requested extension is therefore well established under Rule 4(m).

To ensure service is effected during the extension period, Plaintiffs also seek an order authorizing the following alternative methods of service, each independently reasonably calculated to apprise Ye of this action: (a) posting copies of the Summons and First Amended Complaint at the property gate of the Beverly Park Residence; (b) service of the same documents on the armed security guard escort assigned to accompany Plaintiffs' process server to the Beverly Park Residence; (c) mailing of copies of the same documents by certified mail to the Beverly Park Residence; and (d) emailing copies of the same documents to attorney Eduardo Martorell of Martorell Law APC at the following email address: EMartorell@martorell-law.com.

For the reasons set forth herein, Plaintiffs respectfully submit that the Court should grant the Motion in its entirety.

## II. STATEMENT OF FACTS

### A. Procedural Background

On February 12, 2026, Plaintiffs filed this copyright-infringement action. (ECF Nos. 1-9.) The lawsuit arises from the defendants' unauthorized sampling and use of Plaintiffs' copyrighted sound recording "Break the Fall Acoustic," and its underlying composition, in the recording "530" and asserts six causes of action. (ECF No. 1.)

On February 23, 2026, Yeezy was served with the Summons and Complaint. (ECF No. 18.)

On March 19, 2026, Plaintiffs filed their First Amended Complaint ("FAC"), which added Too Lost as a defendant. (ECF No. 22.) A few days earlier, Plaintiffs voluntarily dismissed without prejudice defendant Label Engine, LLC. (ECF No. 20.)

On March 30, 2026, Too Lost was served with the Summons and FAC. (*See*

ECF No. 26.) On April 21, 2026, Too Lost and Plaintiffs stipulated to a thirty-day extension of Too Lost's deadline to respond to the FAC up to May 21, 2026. (ECF No. 30.)

On March 31, 2026, Yeezy was served with the FAC. (*See* ECF No. 25.) On April 14, 2026, Yeezy appeared through counsel Eduardo Martorell of Martorell Law APC. On that same date, Yeezy and Plaintiffs stipulated to a thirty-day extension of Yeezy's deadline to respond to the FAC up to May 14, 2026. (ECF No. 27.)

On May 7, 2026, Griffin was served with the Summons and FAC. (ECF No. 33.) Griffin's deadline to respond to the FAC is May 28, 2026. (*See id.*).

Ye has not yet been served. As detailed below, Plaintiffs have undertaken substantial efforts to effect personal service on Ye, and have requested Ye execute a waiver under Rule 4(d), which Ye refuses to do.

The current deadline for service under Rule 4(m) is May 13, 2026. (Blum Decl. ¶ 12.)

### B. <u>Plaintiffs' Diligent Efforts to Effect Service on Ye</u>

#### 1. *Identification of Ye's Current Residence*

In February 2026, Plaintiffs engaged ABC Legal Services, LLC ("ABC Legal"), a registered process server, to serve Ye. (Blum Decl. ¶¶ 2-3, Ex. 1.)

ABC Legal conducted a skip-trace investigation, drawing on commercial-data sources including Accurint, TLO, and CBC Innovis, and identified Ye's current residence as 72 Beverly Park, Beverly Hills, California 90210 (the "Beverly Park Residence"). (*Id.*)

The investigation determined that the underlying real property was acquired in September 2024 by Shore Drive Holdings, LLC, an Illinois limited liability company. (*Id.*) Public records establish that Shore Drive Holdings, LLC is affiliated with Ye. On March 21, 2026, Ye executed Shore Drive Holdings, LLC's most recent Illinois Limited Liability Company Act Annual Report, signing under

penalty of perjury as the entity's "Authorized Person." (Blum Decl. ¶¶ 5-6, Ex. 2.) The Kanye West Revocable Trust is identified as a manager or member of Shore Drive Holdings, LLC on the entity's filings with both the California and Illinois Secretaries of State. (*Id.*, Exs. 2-3.)

Shore Drive Holdings, LLC's California address on file with the California Secretary of State is 8025 Melrose Avenue, Los Angeles, California 90046—the same address listed as the principal street and mailing address for Yeezy, Ye's record label.[2] (*Id.*, Ex. 3.)

Moreover, on May 5, 2026, while attempting to serve Ye at the Beverly Park Residence, a security guard supervisor for the gated community, Edgar, acknowledged to the process server that Ye resided at the Beverly Park Residence and even represented to the process server that Ye would often stop at the gate to greet the security personnel who found him to be a "nice resident." (Chevez Decl. ¶ 6.) Furthermore, while attempting to serve Ye at the Beverly Park Residence on May 6, 2026, a visitor arrived at the Beverly Park Residence at approximately 7:13 a.m. and was identified by a security guard named Guillermo as a member of the styling team of Ye's wife. (*Id.* at ¶ 16.)

### 2. *The Eleven Attempts to Serve Ye at the Beverly Park Residence.*

The Beverly Park Residence is located within a guard-gated community. Access to the community is controlled by private security personnel that possess a handgun firearm on their person and are stationed at the community's outer gates. (Chevez Decl. ¶ 6.) The Beverly Park Residence is in turn protected by its own separate property gate spanning approximately fifteen feet in height across the boundary of the property. (Chevez Decl. ¶¶ 6, 9, Exs. A, C.)

On every attempt to date, the process server has been required to wait at the

[2] The Illinois Annual Report lists 20020 Parthenia Street, Northridge, California 91324 as Shore Drive Holdings, LLC's principal place of business. (Blum Decl. ¶ 6, Ex. 2.) That address, however, is a vacant lot that is unserviceable. (Chevez Decl. ¶¶ 28, 30.)

security booth for a security escort to the Beverly Park Residence. Upon arrival by escort, the process server is given a strict time limit to remain at the property gate, and then is escorted back out. The result is that the process server has been prevented, on every attempt, from effecting service at the Beverly Park Residence. (*See, e.g.,* Chevez Decl. ¶¶ 8, 11, 19, 23, 26.)

Nelli Gevorgyan of ABC Legal made four attempts at service at the Beverly Park Residence between March 7 and March 27, 2026, none successful. (Gevorgyan Decl.) On each attempt, the security personnel allowed Ms. Gevorgyan past the outer community gate and escorted her to the property gate of the Beverly Park Residence. (*Id.*) At the property gate, Ms. Gevorgyan was unable to gain access to the residence: the property-gate intercom was non-functioning or unanswered, no one inside the residence responded to the process server's presence, and the community security escort required her to leave the community after a brief period at the property gate. (*Id.*) At no point during any attempt did Ms. Gevorgyan gain access past the property gate or reach the front door of the residence. (*Id.*) On April 9, 2026 at 8:23 a.m., Ms. Gevorgyan placed a call to a known telephone number ending in 0777 associated with Ye and received a recorded message indicating that the number had been disconnected. (*Id.*)

ABC Legal also dispatched process server Gregory Peck, who made three additional attempts at the Beverly Park Residence on May 2, May 5, and May 6, 2026. (Peck Decl.) On each attempt, security escorted Mr. Peck to the call box at the front gate of the residence, permitted him a brief period to attempt contact through the call box. After receiving no response from inside the residence, the security guard promptly escorted him out of the community. (*Id.*) On each attempt, Mr. Peck observed individuals inside the property through the gate. (*Id.*)

Plaintiffs also engaged Belki Cisneros Chevez, a registered process server, to attempt to effect service on Ye. On May 5, 2026 at approximately 4:40 p.m., Ms. Chevez arrived at the security booth at the outer gate of the Beverly Park

community. (Chevez Decl. ¶ 6.) Ms. Chevez was met by a security supervisor identifying himself as "Edgar" and approximately five armed security personnel. (*Id.*) Ms. Chevez identified herself as a registered process server attempting to serve a Summons and Complaint on Ye at the Beverly Park Residence. (Chevez Decl. ¶ 6.)

Edgar confirmed that Ye "resided at 72 Beverly Park" and described Ye as a "nice resident" who "would often stop at the gate to greet security personnel." (*Id.*) Edgar required Ms. Chevez to provide her process-server registration card and driver's license, and then required that she be escorted to the residence by an armed security guard, with the guard escorting her both to and from the property and limiting her time at the residence to approximately five minutes. (Chevez Decl. ¶¶ 7-8, Exs. A, B.)

Upon arriving at the property gate of the Beverly Park Residence, Ms. Chevez observed that two locked gates—a pedestrian gate and a vehicle gate—prevented access to the front entrance to the house. (Chevez Decl. ¶¶ 9-10, Ex. C.) Ms. Chevez utilized the intercom system; no one responded. (*Id.*) Ms. Chevez observed two black Maybach vehicles, a two-door Porsche, and several Amazon packages near the front door. (*Id.*) Before Ms. Chevez could make further contact attempts, the armed escort declared her five minutes expired and removed her from the gated community. (Chevez Decl. ¶ 11.)

On May 6, 2026, at approximately 6:45 a.m., Ms. Chevez returned to the security booth and was again escorted to Ye's residence—this time by an armed guard identifying himself as "Guillermo." (Chevez Decl. ¶¶ 12, 14.) Ms. Chevez again attempted contact through the intercom; no one responded. (Chevez Decl. ¶ 15.) While at the property gate, a black SUV arrived and a visitor—identified by the security escort as a member of the personal styling team of Bianca Censori, Ye's wife—was admitted through the gate by entering a gate code. (Chevez Decl. ¶ 16.) When Ms. Chevez attempted to walk through the open gate to effect service,

Guillermo physically stopped her and stated that she was not permitted to enter the property without authorization from the residents. (Chevez Decl. ¶ 17.) When Ms. Chevez audibly announced "Hello, I have a legal delivery," Guillermo immediately warned her that if she continued, her time would be terminated and she would be removed. (Chevez Decl. ¶ 18, Ex. D.)

On May 6, 2026, at approximately 11:20 a.m., Ms. Chevez returned to the Beverly Park Residence under armed escort. (Chevez Decl. ¶ 20.) On this visit, Ms. Chevez observed multiple individuals at the residence — two adult males outside the property, one in dark clothing who entered a gray Tesla Model 3 and looked away as Ms. Chevez attempted to communicate, and a gardener who walked toward the rear of the residence and ignored her. She observed an additional adult male inside the residence performing repairs on a window. (Chevez Decl. ¶¶ 20-21.) Ms. Chevez also observed a Tesla Cybertruck parked near the garage. (Chevez Decl. ¶ 22, Ex. E.) None of the individuals observed at the residence acknowledged Ms. Chevez or provided access. (Chevez Decl. ¶ 21.) Ms. Chevez again attempted contact through the intercom; no one responded. (Chevez Decl. ¶ 22.)

On May 8, 2026, at approximately 11:50 a.m., Ms. Chevez returned to the Beverly Park Residence under armed escort by Guillermo. (Chevez Decl. ¶ 24.) Ms. Chevez observed two black Maybach vehicles and a black two-door Porsche parked near the front entrance of the residence—the same vehicles she had observed on her May 5, 2026 attempt. (*Id.*) Ms. Chevez utilized the property gate intercom for approximately three minutes; no one inside the residence responded. (*Id.*) Upon receiving no response, Ms. Chevez deposited a sealed envelope addressed to Defendant Ye in the mailbox located outside the secured property gate. (Chevez Decl. ¶ 25.) The envelope contained a copy of the Summons, a copy of the First Amended Complaint, two copies of the Notice and Acknowledgment of Receipt of Summons, and a self-addressed, postage-prepaid

return envelope to Plaintiffs' counsel. (*Id.*) Although the mailbox was locked, Ms. Chevez was able to gain access to the mailbox for the limited purpose of depositing the envelope. (*Id.*) As on each prior visit, Guillermo declared Ms. Chevez's five-minute window expired and escorted her out of the gated community before any further attempts at contact could be made. (Chevez Decl. ¶ 26.) On May 8, 2026, Ms. Chevez also mailed to Ye the Summons, a copy of the First Amended Complaint, two copies of the Notice and Acknowledgment of Receipt of Summons, and a self-addressed, postage-prepaid return envelope to Plaintiffs' counsel. (Chevez Decl. ¶ 27.) As of the date of this Motion, Ye has not signed or returned the acknowledgment form. (Blum Decl. ¶ 27.)

### 3. *Attempts to Serve Ye at the Address of Yeezy and Shore Drive Holdings, LLC*

Plaintiffs separately attempted to serve Ye at Yeezy's street and mailing address, and the street and mailing address Shore Drive Holdings, LLC maintained with the California Secretary of State: 8025 Melrose Avenue, Los Angeles, California 90046.[3] (Blum Decl. ¶ 11, Ex. 5.) On April 28, 2026 at 1:18 p.m. and again on April 29, 2026 at 9:56 a.m., the process server reported that the building had been demolished; the lot is fenced and unoccupied. (Terentyeva Decl.) The process server determined that the address is "permanently unserviceable." (Terentyeva Decl.)

Plaintiffs separately attempted personal service on Ye at 20020 Parthenia Street, Northridge, California 91324—the address listed for Shore Drive Holdings, LLC in its March 21, 2026 Illinois Annual Report. (Blum Decl., Ex. 2.) On May 8, 2026 at approximately 3:30 p.m., Ms. Chevez attempted service at the Northridge address and confirmed it to be "an empty lot filled with trash and in a

[3] In its 2025 California Statement of Information, Ye is identified as a manager or member of Yeezy, and his address is listed as the 8025 Melrose Avenue address. (Blum Decl. Ex. 5.) In 2023, Ye signed the California Statement of Information in his capacity as Yeezy's "Manager." (*Id.* at Ex. 4.)

state of disrepair" and unserviceable. (Chevez Decl. ¶¶ 28, 30, Ex. F.)

### 4. *Communications with Counsel Eduardo Martorell*

On Friday, April 3, 2026, Eduardo Martorell of Martorell Law APC contacted Plaintiffs' counsel by email, stating that he was "in the process of being retained by Yeezy Record Label and Ye f/k/a Kanye Omari West," and requesting a thirty-day extension of time to respond to the Complaint on behalf of both defendants. (Blum Decl. ¶ 17, Ex. 7.)

On Monday, April 6, 2026, Plaintiffs' counsel agreed to the requested thirty-day extension and offered to send Mr. Martorell a notice of lawsuit and waiver of service of summons under Rule 4(d) for Ye, which, if returned, would have afforded Ye sixty days to respond. (*Id.*) Mr. Martorell did not timely respond and Plaintiffs' counsel sent follow-up emails on April 8 and April 13, as well as left a voicemail on April 13. (*Id.*)

On April 14, 2026 at 4:23 p.m.—the day by which a stipulated extension of Yeezy's time to respond to the FAC would need to be filed—Mr. Martorell finally responded with a proposed Local Rule 8-3 stipulation that was limited to Yeezy. (*Id.*) Mr. Martorell wrote: "I can confirm I will represent Yeezy Record Label LLC and given that is the party that has been served, I attach a proposed LR 8-3 Stipulation extending the time to respond for 30 days." (*Id.*) Due to the prior representation that Plaintiffs would grant the 30-day extension, Plaintiffs' counsel did not condition agreement to the stipulation on Mr. Martorell's acceptance of service for Ye, but sought to speak on the phone to address this issue with counsel. (*Id.*)

Plaintiffs' counsel called and left a voicemail for Mr. Martorell on April 15, 2026, and on April 17, 2026 sent Mr. Martorell a follow-up email requesting that his firm accept service on behalf of Ye, noting Mr. Martorell's prior representation that he would be representing Ye in this action. (Blum Decl. ¶ 22, Ex. 7.) Mr. Martorell's office responded but did not agree to accept service, offering instead to

schedule a telephonic conference for April 20, 2026. (*Id.*)

During the April 20 conference, Mr. Martorell stated for the first time that Ye would not waive service because, in Ye's view, Ye does not have personal liability in this action and that any liability would be limited to only Yeezy. (Blum Decl. ¶ 23.) Plaintiffs' counsel responded that he disagreed with those factual and legal conclusions, and that, in any event, the absence of liability, as counsel was attempting to claim, is a substantive defense and not a basis to refuse to accept service, as doing so would not waive any substantive defenses. (*Id.*)

On April 28, 2026, Plaintiffs' counsel sent Mr. Martorell a follow-up email advising of Plaintiffs' intention to file the present Motion and offering specific telephonic-conference times on April 30 and May 1, 2026 to determine if a resolution would be possible. (Blum Decl. ¶ 24, Ex. 8.) Mr. Martorell did not respond to the email. (*Id.*)

## III. ARGUMENT

### A. <u>Good Cause Exists for Granting Plaintiffs a Ninety-Day Extension of Time to Serve Ye</u>

Rule 4(m) provides: "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

In the Ninth Circuit, "Rule 4(m) requires a two-step analysis in deciding whether or not to extend the prescribed time period for the service of a complaint: First, upon a showing of good cause for the defective service, the court must extend the time period. Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period." *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001) (internal citations omitted).

Where the plaintiff demonstrates good cause, the district court must extend the time for service. *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). "When considering a motion to dismiss a complaint for untimely service, courts must determine whether good cause for the delay has been shown on a case by case basis." *Yates v. Yee Mei Cheung*, No. C10-5404 TEH, 2012 WL 3155700, at *2 (N.D. Cal. Aug. 2, 2012). In the Ninth Circuit, good cause to avoid dismissal may be "demonstrated by establishing, at minimum, excusable neglect." *In re Sheehan*, 253 F.3d at 512. In addition, a plaintiff may need to demonstrate that "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991).

However, even if there is no good cause, the court has broad discretion to extend the time period. *In re Sheehan*, 253 F.3d at 513. The time period for service contained in Rule 4(m) "operates not as an outer limit subject to reduction, but as an irreducible allowance." *Henderson v. United States*, 517 U.S. 654, 661 (1996).

**1. *Plaintiffs Have Demonstrated Good Cause to Extend the Deadline to Serve Ye.***

Despite extensive and diligent efforts, Plaintiffs have not yet been able to effect personal service on Ye. Plaintiffs engaged registered process servers and, through a multi-source skip trace, corroborating public records on file with the California and Illinois Secretaries of State, confirmed that Ye's current residence is 72 Beverly Park, Beverly Hills.

Ye's residence sits within a guard-gated community and behind a separate property gate. (Chevez Decl. ¶¶ 6, 9, Exs. A, C.) The security personnel allow the process server past the outer community gate on the condition that the server be accompanied by a security escort, who remains with the server at the Beverly Park

Residence's gate. The security guard affirmatively limits the process server's time at the property gate to *approximately five to ten minutes*, and prevents the server from entering the Beverly Park Residence's gate, even when the gate momentarily opens to admit other persons. (Chevez Decl. ¶¶ 8, 16-19, Ex. D.) The intercom at the property gate has been non-functioning or unanswered on each attempt, and no one inside the residence has responded to the server's presence—even when, on multiple attempts, the process servers observed individuals inside the property through the gate. (Chevez Decl. ¶¶ 10, 15, 22, 24, Ex. E; Peck Decl.)

The result is that, *on eleven attempts over approximately two months*, the process server has been physically prevented from reaching the front door of the residence. On April 9, 2026, the process server reached a known telephone number associated with Ye and learned that it had been disconnected. (Gevorgyan Decl.) In short, by virtue of Ye's extensive private security apparatus and his disconnection of an associated telephone number, Ye has erected and maintained the very physical barriers that have prevented personal service at his residence.

Plaintiffs also attempted to serve Ye at 8025 Melrose Avenue—the listed business address with the California Secretary of State for: (1) Yeezy, (2) Ye in his capacity as manager or member of Yeezy, and (3) Shore Drive Holdings, LLC. However, the process server confirmed that the building had been demolished, making the location "permanently unserviceable." (Terentyeva Decl.) Plaintiffs separately attempted personal service on Ye at 20020 Parthenia Street, Northridge, California 91324, the address listed for Shore Drive Holdings, LLC in its March 21, 2026 Illinois Annual Report, and confirmed it to be "an empty lot filled with trash and in a state of disrepair" and unserviceable. (Chevez Decl. ¶¶ 28, 30, Ex. F.)

Plaintiffs also engaged in repeated good-faith efforts to resolve the service issue with Mr. Martorell—an effort that counsel for Ye himself initiated. On April 3, 2026, Mr. Martorell emailed Plaintiffs' counsel, identifying himself as being "in

the process of being retained by Yeezy Record Label and Ye" and requesting a thirty-day extension to respond to the complaint on behalf of both Yeezy and Ye. (Blum Decl. ¶ 17, Ex. 7.) Plaintiffs agreed the next business day and further, offered a Rule 4(d) waiver that would have given Ye sixty days to respond to the complaint. (*Id*. at ¶ 18, Ex. 7.) After repeated attempts to address the service issue, on April 20, in the parties' first and only conference on the issue, Mr. Martorell stated to Plaintiffs' counsel that Ye would not accept service because, according to him, Ye did not believe he was personally liable for the allegations in the FAC. (*Id*. at ¶ 23.)

Each of the three additional *Boudette* factors is independently satisfied:

*First*, Ye appears to have personally received actual notice of this action. Mr. Martorell has been in contact with Plaintiffs' counsel since April 3, 2026, and initially sought, on Ye's behalf, an extension of time to respond to the FAC while he gets retained by Ye, indicating Ye's knowledge of the action. Counsel has since articulated Ye's purported position on the merits of the allegations against Ye. (Blum Decl. ¶ 23.) In making the claims that Ye would not be personally liable, counsel tacitly concedes he must have communicated with Ye about the lawsuit and the factual allegations concerning Ye. Moreover, Ye is identified on Yeezy's most recent Statement of Information as a manager or member of Yeezy and previously signed Yeezy's Statement of Information, under penalty of perjury, in his capacity as the entity's "Manager." (Blum Decl., Exs. 4-5.) Given Ye's relationship to Yeezy, and that Yeezy is a defendant in this action, appearing in this action through Mr. Martorell, Ye has actual notice. *Medlink Health Sols., LLC v. Maddox Def. Inc.*, No. 22-CV-1306-AGS-DEB, 2024 WL 5037515, at *2 (S.D. Cal. Sept. 12, 2024) (finding defendants had actual notice of the action where their counsel was also counsel for appearing defendant, mitigating any prejudice from insufficient service). Together these facts strongly indicate that Ye has actual notice of this action.

*Second*, Ye will suffer no prejudice from the requested extension. The case is in its earliest stages—discovery has not commenced; no scheduling order has been entered; and no trial date has been set. Moreover, Ye cannot credibly assert prejudice from a delay he is choosing to create by refusing to waive service (especially after requesting an extension), while simultaneously rendering service at his residence impracticable.

*Third*, Plaintiffs would be severely prejudiced if the action were dismissed as to Ye. Dismissal would force Plaintiffs to refile and serve a defendant whose service has been thwarted by numerous barriers including physical barriers and vacant business addresses. Dismissal would unduly fragment and frustrate the adjudication of a single, interconnected set of copyright claims across separate proceedings, with Yeezy and the other defendants already proceeding on schedule in this action, and Ye—one of the primary wrongdoers—in a separate action, despite being *based upon the same allegations and same causes of action*, creating entirely avoidable inefficiencies including producing duplicative discovery and potentially inconsistent rulings.

In 2015, the deadline for service of process was reduced from 120 days to 90 days. The Advisory Committee recognized that "[s]hortening the presumptive time for service will increase the frequency of occasions to extend the time. More time may be needed, for example, when a request to waive service fails [or] a defendant is difficult to serve…." Appendix C. Federal Rules of Civil Procedure for the United States District Courts, with Advisory Committee Notes, 12A Fed. Prac. & Proc. Civ. App. C (2026 ed.). Plaintiffs respectfully submit that the examples envisioned by the Advisory Committee for extending time to serve a defendant are applicable here. To date, service on Ye has been exceedingly difficult, while, at the same time, Ye has refused to waive service.

Based upon all of the factors above, good cause has been established for the requested ninety-day extension under Fed. R. Civ. P. 4(m). *See Glob. Weather*

*Prods., LLC v. DiCaprio*, No. 2:23-CV-09279-SK, 2024 WL 5495346, at *1 (C.D. Cal. Jan. 30, 2024) (holding good cause to extend deadline to serve defendant where plaintiff showed reasonable diligence by making five unsuccessful attempts at personal service); *Marathon Petroleum Co. LP v. Highland Cargo Inc.*, No. 24-CV-0298-BAS-AHG, 2024 WL 3297488, at *1 (S.D. Cal. July 3, 2024) (holding good cause to extend service deadline where plaintiffs had repeatedly attempted to effect service but service proved impracticable).

### B. <u>In The Alternative, the Court Should Exercise Its Discretion to Extend the Time for Service by Ninety Days</u>

Even if the Court were to conclude that Plaintiffs have not made a good-cause showing—which Plaintiffs assert they have—the Court still possesses broad discretion to grant the requested extension. *In re Sheehan*, 253 F.3d at 513. The Ninth Circuit has identified four factors that may guide the Court's discretion to extend the Rule 4(m) period absent good cause: (i) whether the statute of limitations would bar refiling; (ii) prejudice to the defendant; (iii) actual notice of the lawsuit; and (iv) eventual service. *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

Here, the Court should exercise its discretion and grant the ninety-day extension for at least the following reasons. This Motion is brought before the Rule 4(m) deadline expires, in good faith, after Plaintiffs exhausted the avenues of personal service and pursued waiver of service. Plaintiffs believe they will be able to effect service on Ye, including by the alternative methods of service requested herein, and the case will be able to timely proceed. Moreover, Plaintiffs contend Ye has actual notice of this action through Mr. Martorell. *See Weberman v. Noble Collection*, No. 2:24-CV-05230-AB-AJR, 2025 WL 1377758, at *4 (C.D. Cal. Apr. 1, 2025) (granting service extension in part because unserved defendant had actual notice of lawsuit where his counsel had been actively involved in the litigation and had established knowledge of the case). Ye will not suffer prejudice

from a modest extension. The case is in its earliest stages and Ye will be able to set forth his defenses when he appears. *See In re Nat'l Sec. Agency Telecommunications Recs. Litig.*, 564 F. Supp. 2d 1109, 1137 (N.D. Cal. 2008) (granting extension despite approximately 680 days having lapsed between filing and the motion because little had occurred to prejudice a late-served defendant). In light of the general preference to decide cases on the merits whenever reasonably possible, and because service may still be effectuated, the Court should exercise its broad discretion to extend the time for service by ninety days. *See Hoskins v. City of San Diego*, No. 24-CV-01488-AJB-DTF, 2025 WL 1994677, at *11 (S.D. Cal. July 17, 2025) (granting ninety days to complete service, finding dismissal inappropriate where a reasonable prospect exists that service may yet be obtained).

### C. The Court Should Authorize the Alternative Methods of Service on Ye

Fed. R. Civ. P. 4(e)(1) permits service on an individual within a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1). California law liberally construes service rules "to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant," directing that "the question of service should be resolved by considering each situation from a practical standpoint[.]" *Espindola v. Nunez*, 199 Cal.App.3d 1389, 1391 (1988) (internal citations and quotation marks omitted).

Cal. Civ. Proc. Code § 413.30 expressly authorizes the court, "upon motion," to "direct that summons be served in a manner that is reasonably calculated to give actual notice to the party to be served, including by electronic mail or other electronic technology…." The "reasonably calculated" standard tracks the constitutional due-process requirement: the method of service must be

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The alternative methods of service must comport with due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).

**1. *Plaintiffs Satisfy the Requirements for Alternative Service***

Plaintiffs have satisfied the requirements of California Code of Civil Procedure § 413.30(a)(2) to "set forth facts detailing all attempts to serve the defendant by each of the methods prescribed by statute, including facts demonstrating why each method was unsuccessful at every address or location where the defendant is likely to be found." As to personal service under § 415.10, Plaintiffs made eleven attempts at the Beverly Park Residence between March 7 and May 8, 2026, each obstructed by security personnel and the property gate that controls access to the dwelling. Plaintiffs further attempted personal service at the street address and mailing address listed with the California Secretary of State for Yeezy, Ye, in his capacity as manager and member of Yeezy, and Shore Drive Holdings, LLC, on two separate dates but found the building demolished and the lot "permanently unserviceable." Plaintiffs further confirmed that 20020 Parthenia Street, Northridge, California 91324 is a vacant lot. These attempts establish Plaintiffs have fully satisfied their requirement of reasonable diligence. *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 908 (N.D. Cal. 2023) (explaining two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence).

As to substitute service, Section 415.20(b) authorizes substitute service at a defendant's dwelling only by leaving documents with "a competent member of the household." Cal. Civ. Proc. Code § 415.20(b). Plaintiffs' process servers have been physically prevented, on every attempt, from reaching any member of Ye's household. Indeed, the process servers have not even been able to obtain access

beyond the outside fifteen-foot gate to the Beverly Park Residence—making substitute service on a resident nearly impossible. (*See* Gevorgyan Decl., Peck Decl., Chevez Decl.) Section 415.20(b) authorizes substitute service by leaving a copy of the summons and complaint at the person's usual place of business in the presence of a person apparently in charge of his or her office, at least 18 years of age. Here, the business address associated with Yeezy and Ye is demolished and the lot "permanently unserviceable." (Terentyeva Decl.) The Northridge address listed on Shore Drive Holdings, LLC's Illinois Annual Report is also a vacant lot and unserviceable. (Chevez Decl. ¶¶ 28, 30, Ex. F.) Thus, there is no means for Plaintiffs to substitute serve Ye at these purported business locations. Plaintiffs' multi-source skip-trace investigation also did not identify any current usual mailing address for Ye separate from the Beverly Park Residence, and the National Change of Address service reported no forwarding address for Ye. (Blum Decl. ¶ 28.) The § 415.20(b) usual-mailing-address variant is therefore also unavailable.

As to mail-and-acknowledgment of service under § 415.30, after offering waiver of service to Ye, Mr. Martorell affirmatively represented to Plaintiffs' counsel that Ye would not waive service of process because Ye did not believe he was liable in this action. Given Mr. Martorell's representations, this method of service is futile. *See Cadence Design Sys., Inc. v. Fenda USA Inc.*, 734 F. Supp. 3d 960, 967 (N.D. Cal. 2024) (finding "futile to attempt service by mail under Section 415.30" where the defendant's counsel had refused to accept service for the client, and authorized alternative service under California law without requiring an attempted § 415.30 mailing). Notwithstanding the futility of § 415.30 service, the requisite documents for mail-and-acknowledgment of service were mailed to Ye at the Beverly Park Residence on May 8, 2026. (Blum Decl. ¶ 27; Chevez Decl. ¶ 27.) The twenty-day period under § 415.30(c) will expire prior to the hearing on this Motion. (*Id.*)

Section 415.40—service by mail on a person outside California—is

inapplicable because Ye is a California resident. (Blum Decl. ¶ 29.) Section 415.50 publication is reserved under California law as a method of last resort that need not be attempted before § 413.30 relief is sought. (*Id.*); *see Watts v. Crawford,* 10 Cal. 4th 743, 748 (1995) (publication is a "last resort" available "if service upon a party by [the other] enumerated means proves impossible").

### 2. *The Court Should Authorize the Four Proposed Alternative Methods of Service on Ye*

Plaintiffs respectfully request that service on Ye be authorized through the following four independent channels: (1) posting copies of the Summons and First Amended Complaint at the property gate of the Beverly Park Residence; (2) service of the same documents on the armed security escort assigned to accompany Plaintiffs' process server to the property gate of the Beverly Park Residence; (3) mailing copies via certified mail of the same documents to the Beverly Park Residence; and (4) email transmission of copies of the same documents to Eduardo Martorell.

Each of these independent methods of service is reasonably calculated to give Ye actual notice of the action.

*First*, posting at the property gate of the Beverly Park Residence is reasonably calculated to give Ye actual notice. As set forth herein, the Beverly Park Residence is Ye's current residence. The property gate is the physical access point to the residence. Documents posted at the property gate are physically associated with the point of entry to Ye's home and are reasonably calculated to come to Ye's attention through the ordinary course of his use of the property. *See U.S. Liab. Ins. Co. v. Hediz, LLC*, No. 3:25-CV-00261-ART-CLB, 2025 WL 3215920, at *2 (D. Nev. Nov. 17, 2025) (holding, under Nevada law, service by posting to residence and via certified mail to defendant comports with due process where the address is reasonably calculated to give defendant notice and plaintiff had undertaken significant efforts to personally serve defendant).

*Second*, service on the armed security escort assigned to accompany the process server to the Beverly Park Residence should be permitted. By assigning an armed escort to shadow Plaintiffs' process server at all times, restricting the process server's movement at the property, even when the gate momentarily opens, and forcing the process server to leave within minutes of arrival, Ye has engaged this private security force to defeat both personal service under § 415.10 and substitute service under § 415.20(b). (*See* Chevez Decl. ¶¶ 8, 11, 14, 17-19, 23, 26.) Authorizing service on the security guard escort directs service to the precise person Ye has charged with preventing it, and is reasonably calculated to give Ye actual notice through the very channel he has constructed to restrict access to his home. *Khourie, Crew & Jaeger v. Sabek, Inc.*, 220 Cal. App. 3d 1009, 1013 (1990) (holding a "defendant will not be permitted to defeat service by rendering physical service impossible"); *see also F. I. duPont, Glore Forgan & Co. v. Chen*, 41 N.Y.2d 794, 797 (1977) (reasoning that "the outer bounds of the actual dwelling place must be deemed to extend to the location at which the process server's progress is arrested"). Service through the armed escort—the very person Ye has designated to control access to his residence—is reasonably calculated to provide notice to Ye and to satisfy due process. *Mullane,* 339 U.S. at 314.

*Third*, mailing via certified mail to the Beverly Park Residence supplies an independent channel of notice that does not depend on the property gate at all. Mail addressed to the residence enters Ye's household through the U.S. Postal Service delivery process, which the property gate does not interdict. The combination of posting and mailing is therefore not a single point-of-failure method but two independent methods, each reasonably calculated to give actual notice in its own right. *U.S. Liab. Ins. Co.*, 2025 WL 3215920, at *2 (explaining service by certified mail comports with due process where the address is reasonably calculated to give defendant notice).

*Fourth*, email transmission to Mr. Martorell is reasonably calculated to give

Ye actual notice of the action. Mr. Martorell has demonstrated that he is in communication with Ye about this lawsuit, including by knowing Ye's position on the merits and by representing Yeezy in this action. Service on Mr. Martorell is appropriate and reasonably calculated to apprise Ye of the action. *See Rio Props., Inc.*, 284 F.3d at 1017 (holding serving process on attorney reasonably calculated to apprise defendant of the action where client consulted attorney about lawsuit, attorney knew of client's legal position in lawsuit, and it appeared attorney was in contact with client).

In sum, these four methods satisfy the constitutional standard articulated in *Mullane* and California Code of Civil Procedure § 413.30 that the chosen method of service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314. Accordingly, pursuant to Fed. R. Civ. P. 4(e)(1) and California Code of Civil Procedure § 413.30, the Court should authorize Plaintiffs to serve Ye by these four methods.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and enter an order: (1) extending the time to complete service of process on Ye by ninety days, pursuant to Fed. R. Civ. P. 4(m); and (2) authorizing service of the Summons and First Amended Complaint upon Ye during the extended period, pursuant to Fed. R. Civ. P. 4(e)(1) and California Code of Civil Procedure § 413.30, as follows: (a) posting copies of the Summons and First Amended Complaint at the property gate of 72 Beverly Park, Beverly Hills, California 90210; (b) service of the same documents on the armed security escort assigned to accompany Plaintiffs' process server at the property gate of the Beverly Park Residence; (c) mailing of copies of the same documents by certified mail to 72 Beverly Park, Beverly Hills, California 90210; and (d) emailing copies of the same documents to Mr. Martorell at EMartorell@martorell-law.com. Service should be deemed effective upon the

latest of the date of posting, the date of mailing, or the date of email transmission.

Dated: May 12, 2026

Respectfully submitted,
BLUM LAW FIRM

By: /s/ Joshua Blum
Joshua Blum
*Attorneys for Plaintiffs*
OLIVIA ANNE QUILLIN P/K/A SWSH and FUTURE BOUNCE LIMITED D/B/A FUTURE BOUNCE

The undersigned, counsel of record for plaintiffs, certifies that this brief contains 6,954 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 12, 2026

Respectfully submitted,
BLUM LAW FIRM

By: /s/ Joshua Blum
Joshua Blum
*Attorneys for Plaintiffs*
OLIVIA ANNE QUILLIN P/K/A SWSH and FUTURE BOUNCE LIMITED D/B/A FUTURE BOUNCE